GITSON v. YALE LAND CO.

1. VENDOR AND PURCHASER—LAND CONTRACTS—BREACH—NOMINAL DAMAGES.

In an action for the breach of a land contract "to grade and cinderize streets within said subdivision, and to lay cement sidewalks in front of each lot, and plant shade trees on or before one year from date hereof," an admitted and unexcused breach in the particulars charged, *held*, to entitle plaintiffs to a directed verdict for at least nominal damages.

2. SAME—WITNESSES—COMPETENCY — DAMAGES — WEIGHT OF EVIDENCE.

Testimony by a real estate operator with 11 years of varied experience, who had handled subdivisions, was acquainted with the subdivision in question and had looked over the property more than a year and a half after plaintiffs' purchase, *held*, competent as to the value of the lot in its unimproved condition and as to plaintiffs' damages by reason of defendant's breach; its weight and probative value being for the jury.

3. SAME—ADVERSE WITNESS—EVIDENCE—VALUE—RELEVANCY.

Testimony by a. member of defendant corporation, who was called for examination as an adverse witness, as to the price paid for the land in its unimproved state and as to what lots would be worth if improvements had been put in as promised, *held*, not irrelevant and prejudicial.

4. SAME—DAMAGES—EVIDENCE—EXCESSIVE DAMAGES.

Where there was testimony to sustain the verdict for plaintiffs for $425, it cannot be said to be excessive.

Error to Wayne; Hosmer (George S.), J. Submitted October 13, 1920. (Docket No. 92.) Decided December 21, 1920.

Assumpsit in justice's court by Esther Gitson and another against the Yale Land Company for breach of a land contract. There was judgment for plaintiffs, and defendant appealed to the circuit court. Judgment for plaintiffs. Defendant brings error. Affirmed.

*Bishop & Kilpatrick* (*R. R. Weaver*, of counsel), for appellant.

*A. Joseph Seltzer*, for appellees.

STEERE, J. This action was begun and first tried in a justice's court of Detroit. Re-trial was had in the circuit court of Wayne county on appeal taken by defendant resulting in a verdict and judgment of $425 for plaintiffs. The case was thence removed to this court by defendant on various assignments of error. The damages recovered by plaintiffs were for breach of a land contract by which defendant sold them a lot, No. 89, in a subdivision it had platted outside of Detroit called "Puritan Homes Subdivision" of north 30 acres of N. E. ¼ of S. E. ¼ of section 16, T. 1 S., R. 11 E., lying in the township of Greenfield, Wayne county, Michigan.

The purchase price for lot 89 was $1,200. It was called a "business lot," is said to be 39 feet frontage and stated by defendant's secretary to be "larger than any other frontage on Livernois avenue." When the lot was sold to plaintiffs, on March 15, 1917, the subdivision was to all appearances as yet a bare tract of farm land, destitute of any modern municipal improvements or characteristics except the imputed urban attributes resulting from its proximity to Detroit and it had been platted, on the strength of which one of the defendant's directors denied it was "farm land"—giving as his reason that it was "a subdivision, the same as many other subdivisions." It so remained up to the time of the trial in February, 1920. The provisions of the contract against which proof of breach was directed were defendant's agreement "to grade and cinderize streets within said subdivision, lay cement sidewalks in front of each lot, and plant shade trees on or before one year from the date hereof."

At the expiration of the year the promised improvements, as well as the anticipated Puritan homes, upon the subdivision, were yet *in futuro*. Plaintiffs' evidence was plain and positive that the specified improvements were not made and is not denied except by defendant's secretary to the extent of testifying that in March, 1918, streets were being graded, but he admitted no streets had ever been cinderized, nor shade trees planted, nor sidewalks put in. In extenuation of this delinquency he explained in part:

—"it would necessitate the laying between 30,000 and 40,000 square feet of cement walk at from 16 cents to 20 cents per foot. * * * This land was not required for business purposes during that time. There is a lifetime for sidewalks—a certain length of time in age—if they had been put in at the time of this contract they would have deteriorated to such an extent that they possibly would have to be relaid when they began to build on the subdivision."

At conclusion of the testimony defendant unsuccessfully moved for a directed verdict on the ground no damages were shown, then for a verdict *non obstante,* and for a new trial in which it was urged among other things that the verdict was excessive.

Under defendant's assignment of error the points argued in counsel's brief are, that a witness of plaintiff named Weinberg, who gave evidence as to values and damages to lot 89 by reason of the improvements not having been made, was not qualified to testify; that irrelevant and prejudicial testimony was admitted as to previous acreage prices for which the land had sold; that plaintiff furnished no data from which damages could be figured, excessive damages awarded and refusal of the court to grant defendant's request for a directed verdict.

Upon the last point made it is sufficient to state that the record shows an admitted and unexcused material breach of contract, entitling plaintiffs in any event to a directed verdict in their favor for at least nominal damages.

The witness Weinberg, whose testimony defendant claims was incompetent because he was not shown to have qualifying knowledge, had been engaged in the real estate business in Detroit for 11 years, knew the property in this subdivision, had visited it in the fall of 1918 at request of plaintiffs' counsel to look at lot 89, and testified that he found no streets there except Livernois, which had "always been there," that the subdivision was yet farm land unimproved for other purposes and if at any time a street for which he looked had been graded there it was grown over with grass so he could not find it; that before going out to see the lot he made a sketch from data obtained at the county building and while he could not find "Green street," on the land, he was within 20 or 25 feet of where the plat showed lot 89 would be. He owned

lots in a subdivision not more than a quarter of a mile southwest of there, had handled a subdivision in Highland Park, and testified to increased values of subdivisions resulting from grading streets, putting in sidewalks, etc.   He was allowed to testify to the value per foot front of lot 89 as he found it in that unimproved subdivision, that according to his experience and observation such improvements generally doubled the value of such a lot, and in his opinion plaintiffs' damages by reason of the improvements not having been made as agreed by defendant would amount to $540. Such testimony by a real estate operator with 11 years of varied experience in the city of Detroit, who had handled subdivisions himself, was acquainted with this subdivision and looked over the property more than a year and a half after plaintiffs' purchase, was clearly competent.   The weight and probative value of his testimony were for the jury.

The irrelevant and prejudicial testimony complained of was given by J. B. Whitley, an officer and one of the principal stockholders of defendant, who was called by plaintiffs' counsel and examined as an adverse witness.   He had testified without objection: "The value of that property today is from $3,500 to $4,500 an acre.   In 1917 within $500 of that amount lower."   Then, subject to the objections of defendant—"to what we paid for it—irrelevant for this issue," and "might tend to give an impression which does not bear upon this particular case," he was asked by plaintiffs' counsel and answered as follows:

"*Q.* How much did you pay for this acreage?

"*A.* I purchased it personally for $70,000 and sold it to the corporation for $80,000, thirty acres.   There are about 10 lots average per acre.

"*Q.* And at that time the value of that property, according to the price you sold it to the corporation was $80,000—almost $3,000 an acre?

"*A.* Yes, sir.

"*Q.* And you have 10 lots out of each acre?   (Objected to and argued.)

"*Q.* That lot at this price as acreage is worth possibly about $300 per lot, isn't that right?

"*A.* Yes, average.

"*Q.* What would give it the added value, if anything?

"*A.* The demand for homes in that vicinity.   In order to build homes you have to have the subdivision improved.

"*Q.* And if these improvements were in, then this lot would be worth $1,200, wouldn't it?

"*A.* That particular corner lot on Livernois avenue is larger than any other frontage on Livernois avenue, would be worth $1,200.   We have lots for sale at $350 at the back end of that subdivision.   That lot would be worth $1,200 if improved.   It should be worth more.   The frontage has increased in value.   I claim it has increased $100 now without the improvements. If this subdivision were entirely improved, the lot ought to be worth $1,300 at the present time."

The record, which does not very clearly show the changes of examining counsel for the respective sides, indicates, perhaps erroneously, that this witness' first testimony, without objection as to the acreage value of the property, was given while being directly examined by defendant's counsel; but be that as it may, the testimony was without objection and plaintiffs' further pursuit of the subject in examination of an adverse witness was competent and relevant to the subject of values.   The improvements had not been made, the property yet remained in its physical features a tract of 30 acres of farm land, as when purchased by defendant.   Proof of what it had recently sold and resold for in that same condition is some evidence of its value.   *Engel* v. *Tate*, 203 Mich. 679, and cases there cited.   Aside from the claim of irrelevance, counsel urge the testimony was prejudicial as "tending to give a misleading impression, that there are so many elements between the purchase of property in the rough

and platting and subdividing and selling it as a sub-division, that those figures would not in any manner give the correct facts so far as this issue is concerned." Being relevant to values and competent, the fact that this testimony might be helpful to plaintiffs in some particulars would scarcely condemn it as legally "prejudicial." Physically this property remained farming land "in the rough," as when purchased by defendant. The elements of "platting and subdividing and selling it as a subdivision" had not changed its physical features or characteristics. Those elements were, however, shown in the case and before the jury. Plaintiffs claimed that without the supplemental public improvements defendant had agreed to make they did not increase the intrinsic value of the property beyond that of farm land, which it in fact yet remained. To what extent the "elements" of draughting and recording a plat of a farm, or farm lands, measuring and staking the same out into lots and selling or offering the same for sale might of themselves increase its intrinsic value would be for the party claiming such increase to prove.

We cannot agree with defendant's contention that plaintiffs did not furnish sufficient data from which damages could be figured and the verdict was but the result of speculation or conjecture by the jury. Defendant swore no witnesses but rested and requested a directed verdict at conclusion of plaintiffs' testimony.

Weinberg, with 11 years' experience in the real estate business, examined and testified as to the location, condition and value of this property, the difference between its value as he saw it and the value if improved as defendant had agreed, and placed plaintiffs' damages on that basis at about $540. Whitley, an interested, adverse witness with four and one-half years' experience operating in real estate, testified as

before quoted to the value per acre of this subdivision without the promised improvements, when this contract was entered into and later, that the size of lots was about ten to the acre, and to increased value which would result "if these improvements were in." Those men testified to material facts, circumstances and data directly, and were qualified to give their opinions as to values. The evidence direct and inferential was adequate to sustain the verdict rendered. We cannot find as a conclusion of law that it was excessive or unjust.

The judgment is affirmed.

MOORE, C. J., and BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.